**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                          No. CR 21-0745 JB

GABRIEL VILLASENOR,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Investigation Report, filed February 24, 2023 (Doc. 96)("Objections"). In the Objections, Defendant Gabriel Villasenor objects to the Presentence Investigation Report, filed December 23, 2022 (Doc. 86)("PSR"). <u>See</u> Objections at 1. The primary issues are: (i) whether the PSR appropriately applies an 2-level enhancement under § 2D1.1(b)(1) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") as a result of Villasenor's possession of a firearm and ammunition; (ii) whether Villasenor should receive a 4-level reduction under U.S.S.G. § 3B1.2(a) for being a minimal participant in the underlying offense; (iii) whether the PSR considers incorrectly a deferred sentence in applying 3 criminal history points to Villasenor's criminal history score; and (iv) whether the PSR considers incorrectly Villasenor's participation in a community corrections program in applying 2 criminal history points to Villasenor's criminal history score. The Court concludes that: (i) the PSR applies appropriately the 2-level enhancement under § 2D1.1(b)(1), because Villasenor knowingly possessed the firearm and ammunition; (ii) Villasenor should receive a 2-level reduction, because he was a minor participant in the offense, but should not receive a 4-level minimal participant reduction; (iii) the PSR should assign

2 criminal history points for Villasenor's period of incarceration in connection with the case at issue; and (iv) the PSR should assign only 1 criminal history point for Villasenor's participation in the community corrections program.  With a total offense level of 27 and a criminal history category of VI, Villasenor's Guideline imprisonment range is 130 to 162 months.

## **FACTUAL BACKGROUND**

When considering an objection to a PSR, and when neither party challenges the sufficiency of the PSR's factual allegations, the Court can accept the PSR's factual allegations as true.  See Fed. R. Crim. P. 32(i)(3)(A).  Where the parties dispute any portion of the PSR's factual allegations, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ." Fed. R. Crim. P. 32(i)(3)(B).  Villasenor makes five factual objections, regarding: (i) the spelling of his mother's name, see Objections ¶ 9, at 5; (ii) the frequency of his drug use, see Objections ¶ 10, at 5; (iii) his familiarity with co-Defendant Gabriel Blea, see Objections ¶ 1, at 1; (iv) whether Villasenor $100.00 intended to accept Blea's offer of $100.00 for Villasenor to give Blea a ride to the drug deal's location, see Objections ¶ 1, at 1; and (v) whether Villasenor knew there was a gun in a backpack inside the car, see Objections ¶ 2, at 2.  The United States Probation Office ("USPO") filed an Addendum to the Presentence Report, filed March 7, 2023 (Doc. 98)("Addendum"), which reflects the first three of Villasenor's factual objections, and agrees with Villasenor's positions.  See Addendum at 1, 3-4.  Accordingly, the remaining factual objections are whether Villasenor intended to accept Blea's $100.00 offer to give Blea a ride and whether Villasenor knew there was a gun in the backpack inside the car.  The Court addresses these disputes as they arise below.

On May 5, 2021, special Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents arranged through a confidential information to meet Blea, whom they suspected to be an armed methamphetamine trafficker, at a hotel in southeast Albuquerque, New Mexico. See PSR ¶ 12, at 5. Blea arrived at the hotel in a vehicle which Villasenor was driving. See PSR ¶ 12, at 5. Villasenor and Blea had known each other for one-and-a-half to two months, but did not know each other well had not spent much time together. See PSR ¶¶ 14-15, at 6; Addendum at 1. Villasenor drove Blea to the hotel in exchange for $100.00. See PSR ¶ 14, at 6; Plea Agreement ¶ 10, at 5.[1] Villasenor knew that he was driving Blea to the meeting location so that Blea could complete a drug deal. See Plea Agreement ¶ 10, at 5, filed September 2, 2022 (Doc. 76); PSR ¶ 18, at 7 (indicating that the Plea Agreement contains Villasenor's version of the facts). Blea exited the vehicle, grabbed a backpack from the vehicle's front passenger floorboard, and approached the agents, while Villasenor exited the vehicle and rummaged around the back seat. See PSR ¶ 12, at 5. Once Blea approached the agents, they initiated the bust and detained Blea without incident. See PSR ¶ 12, at 5. Villasenor entered the vehicle and attempted to flee before

---

[1]Villasenor objects "to the assertion in ¶ 15 that Mr. Villasenor . . . was going to be paid $100." Objections ¶ 1, at 1. He argues that, in the post-arrest interview, "[w]hen Mr. Villasenor was speaking about being offered money to give Mr. Blea a ride, he stated that he was not intending to accept that much just to give a ride." Objections ¶ 1, at 1. This Objection does not dispute, however, that Blea offered Villasenor $100.00. Accordingly, the Court accepts this fact as true for this Memorandum Opinion and Order's purposes. Regarding whether Villasenor intended to accept the $100.00 payment, the USPO states in the Addendum that, "[w]ith respect to the defendant's intention to accept $100 from Blea, the PSR will remain the same, as this information is corroborated two times in audio recording 210505-0007." Addendum at 1. The USPO states further that, "[i]n this same audio recording, the defendant is asked about the location of the $100 Blea was going to pay him and states, 'I do not know.'" Addendum at 1. The Court does not have this recording or a transcript thereof in the record before it. Villasenor admits in the Plea Agreement, however, that he "drove another co-conspirator to a meeting location in exchange for a promise of payment." Plea Agreement ¶ 10, at 5. Accordingly, the Court concludes that Villasenor intended to accept the $100.00 payment and, if the ATF agents had not arrested Villasenor and Blea, Villasenor "was going to be paid $100." Objections ¶ 1, at 1.

losing control of the vehicle, crashing, and attempting to flee on foot.  See PSR ¶ 12, at 5.  While running, Villasenor fell and attempted to discard a round of 9mm ammunition from his right pocket before the agents detained him.  See PSR ¶ 12, at 5.  The agents search Blea's backpack, which contained 154.54 grams of methamphetamine, 4.6 grams of suspected fentanyl, and 495.7 grams of marijuana, in addition to white oblong pills marked 024, gloves, headphones, $125.00 in United States currency, motel keycards, and lighters.  See PSR ¶ 13, at 5-6; id. ¶ 17, at 7.  Blea was carrying a loaded Girsan MC 1911 CT .45 caliber pistol on his person, and the agents discovered a second backpack in the vehicle which contained a loaded Kimber Custom II .45 caliber pistol, Villasenor's vehicle insurance card, a probation or parole card, small bags, and several rounds of loose ammunition.  See PSR ¶¶ 14-15, at 6.  Villasenor knowingly possessed the weapons and ammunition that were in the backpack.  See Plea Agreement ¶ 10, at 5; PSR ¶ 18, at 7.[2]  Arrest warrants issued for Blea and Villasenor on May 6, 2021, and they were arrested that same day. See PSR ¶ 16, at 7.

---

[2]Villasenor disputed in his post-arrest interview that he knew that the weapon and ammunition were in the backpack.  See PSR ¶ 15, at 6.  In his Objections, he argues that he "was unaware that the firearm was in the backpack in the backseat of the vehicle that he was driving." Objections ¶ 2, at 2.  Instead, he argues that "[h]e knew of the weapon and believed it to be in the room he was renting at the Motel 6."  Objections ¶ 2, at 2.  In the Plea Agreement, his statement of facts which he adopts in the PSR as his version of events, see PSR ¶ 18, at 7, states: "Also on May 5, 2021, ATF agents searched my vehicle and recovered a backpack containing a loaded Kimber Custom II .45 caliber pistol bearing the serial number K722306 and 25 rounds of assorted ammunition, which I knowingly possessed."  Plea Agreement ¶ 10, at 5.  When coupled with the vehicle insurance card and probation card's presence in the backpack, both of which belonged to Villasenor, and indicate that Villasenor opened the backpack before inserting the cards, the Court concludes, by a preponderance of the evidence, that Villasenor knowingly possessed the firearm and ammunition in the backpack.

## PROCEDURAL BACKGROUND

Villasenor was indicted on May 25, 2021 on four counts: (i) a violation of 21 U.S.C. § 846, conspiracy; (ii) a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), possession with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine, and 18 U.S.C. § 2, aiding and abetting; (iii) a violation of 18 U.S.C. § 924(c)(1)(A)(i), using and carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm in furtherance of such crime; and (iv) a violation of 18 U.S.C. §§ 922(g)(1) and 924, felon in possession of a firearm and ammunition. See Indictment at 1, filed May 25, 2021 (Doc. 19)(Court only). On July 27, 2021, Plaintiff United States of America filed a Superseding Indictment, filed July 27, 2021 (Doc. 38)(Court only). The Superseding Indictment charges Villasenor with the same firearms violations, but adjusts the drug-related charges. See Indictment at 1. With respect to the conspiracy charge, the original Indictment states that the quantity of methamphetamine involved in the conspiracy is "50 grams and more of a mixture and substance containing methamphetamine, contrary to 21 U.S.C. § 841(b)(1)(B)," Indictment at 2, while the Superseding Indictment states that the quantity of methamphetamine involved in the conspiracy "is 50 grams and more of methamphetamine, contrary to 21 U.S.C. § 841(b)(1)(A)," Superseding Indictment at 2. Accordingly, the Superseding Indictment charges Villasenor in Count 2 with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2, instead of the original Indictment's charge of a violation of §§ 841(a)(1) and (b)(1)(B), and § 2, to indicate that the offense involves methamphetamine, and not a mixture and substance containing methamphetamine. Compare Indictment at 2, with Superseding Indictment at 2.

On September 2, 2022, the United States charged Villasenor in an Information, filed September 2, 2022 (Doc. 73), with two counts: (i) a violation of § 846, conspiracy; and (ii) a

violation of §§ 922(g)(1) and 924, felon in possession of a firearm and ammunition.  See Information at 1.  That same day, Villasenor waived his right to prosecution by indictment and entered into a plea agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  See Waiver of an Indictment at 1, filed September 2, 2022 (Doc. 75); Plea Agreement at 1-13.  In the Plea Agreement, Villasenor pleads guilty to the Information's Counts 1 and 2, namely "a violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), that being conspiracy to distribute methamphetamine . . . [and] a violation of 18 U.S.C. §§ 922(g)(1) and 924, that being felon in possession of a firearm and ammunition."  Plea Agreement ¶ 3, at 2.  He presents the following statement of facts:

> **On May 5, 2021, in Albuquerque (within Bernalillo County in the District of New Mexico), I drove another co-conspirator to a meeting location in exchange for a promise of payment.  My co-conspirator intended to give undercover agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") methamphetamine in exchange for five firearms.  I knew that I was driving him to the meeting location so he could complete a drug deal.  I have been informed, and I do not contest, that formal lab results show that my co-conspirator possessed 50 grams and more of a mixture and substance containing methamphetamine.**
>
> **Also on May 5, 2021, ATF agents searched my vehicle and recovered a backpack containing a loaded Kimber Custom II .45 caliber pistol bearing the serial number K722306 and 25 rounds of assorted ammunition, which I knowingly possessed.  I also possessed a single round of 9mm ammunition in my pocket, which I attempted to discard when I attempted to flee from the agents.**
>
> **Prior to May 5, 2021, I had been convicted of at least one felony offense, and I knew that I was a convicted felon.  On May 5, 2021, I was on state probation for a prior felony conviction.  I have been informed, and I do not contest, that the firearm I possessed meets the federal definition of a "firearm" and functioned as designed.  I have also been informed, and I do not contest, that neither the firearm nor the ammunition I possessed have been manufactured in the state of New Mexico, and therefore affected interstate or foreign commerce.**

Plea Agreement ¶ 10, at 5-6 (bold in original).  The Plea Agreement indicates that the United States and Villasenor have agreed to a specific sentencing range of 92 to 115 months of imprisonment. See Plea Agreement ¶ 12, at 6.  Villasenor waives his rights to appeal the conviction and sentence imposed.  See Plea Agreement ¶ 24, at 10.

The USPO filed the PSR on December 23, 2022.  See PSR at 1-27.  The PSR establishes the base offense level of 30 for the conspiracy to distribute methamphetamine.  See PSR ¶ 23, at 8.  The PSR reaches this offense level, because U.S.S.G. § 2D1.1 sets a base offense level of 32, but reduces the base offense level to 30, because the PSR later applies a mitigating role reduction under U.S.S.G. § 3B1.2.  See PSR ¶ 23, at 8; U.S.S.G. §§ 2D1.1, 3B1.2.  The PSR applies a special offense characteristic adjustment of 2 levels, because Villasenor possessed a dangerous weapon -- including a firearm.  See PSR ¶ 24, at 8; U.S.S.G. § 2D1.1(b)(1).  The PSR applies a 2-level reduction to the offense level, because Villasenor was a minor participant in the criminal activity.  See PSR ¶ 26, at 8; U.S.S.G. § 3B1.2(b).  The PSR applies a 3-level reduction for acceptance of responsibility, resulting in a total offense level of 27.  See PSR ¶ 32, at 8.  The PSR reviews Villasenor's criminal history and establishes a subtotal criminal history score of 13.  See PSR ¶ 42, at 15.  The PSR applies a 2-point increase to Villasenor's criminal history score, because Villasenor was under a criminal justice sentence for a State case, resulting in a total criminal history score of 15 and a criminal history category of VI.  See PSR ¶¶ 43-44, at 15; U.S.S.G. § 4A1.1(d).  With a total offense level of 27 and a criminal history category of VI, the PSR establishes a guideline imprisonment range of 130 to 162 months.  See PSR ¶ 80, at 22.

Villasenor raises several Objections to the PSR.  See Objections at 1-5.  First, he objects to the PSR's assertion that he knew Blea for one-and-a-half to two months and was going to be paid $100.00, arguing instead that the PSR should clarify that, since meeting Blea, Villasenor had not

spent much time with him, and that, although Villasenor and Blea had discussed payment for the ride to the hotel, Villasenor "stated that he was not intending to accept that much just to give a ride."  Objections ¶ 1, at 1.  Second, Villasenor objects to the 2-level increase resulting from the PSR's application of a special offense characteristic on the basis that Villasenor possessed a firearm during the crime.  See PSR ¶ 2, at 1.  He argues that his possession of the firearm was "constructive" and that he "was unaware that the firearm was in the backpack in the backseat of the vehicle that he was driving," but rather believed it was in a room he was renting at a Motel 6. Objections ¶ 2, at 2.  Villasenor argues that the application notes to § 2D1.1(b)(1) instruct that the special offense characteristic should apply only where the weapon is connected to the crime, and that, here, "it is improbable that the weapon was connected to the offense."  Objections ¶ 2, at 2 (citing U.S.S.G. § 2D1.1 cmt. 11(A)).

Third, Villasenor objects to the PSR's application of a 2-level minor participant role reduction, asserting that he should receive a 4-level minimal participant role reduction instead. See Objections ¶ 3, at 2.  He argues that "Blea was responsible for significantly more drugs and transactions than Mr. Villasenor and Mr. Villasenor did not know the full scope of the drug trafficking and merely acted as a driver."  Objections ¶ 3, at 2.  He asserts that, although ATF agents were investigating Blea, they were not aware of Villasenor until his arrest.  See Objections ¶ 3, at 2.  Villasenor argues that the Guidelines require courts to compare the culpable parties and asserts that he has cooperated with authorities and was involved only in the one incident with Blea. See Objections ¶ 3, at 2-3 (citing U.S.S.G. § 3B1.2 cmt. 3(A)).  He also states that Villasenor is unaware of others' activities or the conspiracy's scope, precluding him "from receiving the benefit of a § 5K1.1 motion," and making an additional 2-level mitigating role reduction appropriate. Objections ¶ 3, at 3.  Villasenor also notes that § 3B1.2 application note 3(c) sets out a list of

factors to consider when deciding whether to apply a mitigating role reduction.  See Objections ¶ 4, at 3.  In conjunction with application note 4, Villasenor notes that, aside from his minimal knowledge of Blea, he does not know the identities of anyone involved in the conspiracy, was not the conspiracy's leader or organizer, did not receive payment for driving Blea, and has demonstrated accountability for his actions.  See Objections ¶ 5, at 4 (citing U.S.S.G. § 3B1.2 cmts. 3(A), 4).  He notes that application note 4 "goes on to say that a defendant's 'lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant,'" and argues that this description describes aptly Villasenor's role in the conspiracy.  Objections ¶ 5, at 4 (quoting U.S.S.G. § 3B1.2 cmt. 4).

Fourth, Villasenor objects to the PSR's assignment of 3 criminal history points for his State conviction in case D-202-CR-2013-03275.  See Objections ¶ 6, at 4.  He argues that he "successfully completed his deferred sentence . . . and was sentenced to jail time, making it impossible to have received more than one year and one month."  Objections ¶ 6, at 4.  He argues that, because he was not sentenced to or imprisoned for more than sixty days, this conviction should contribute only 1 criminal history point.  See Objections ¶ 6, at 5 (citing U.S.S.G. § 4A1.1).

Fifth, Villasenor objects to the PSR's assignment of 2 criminal history points in connections with his conviction in State case D-202-CR-2019-02208.  See Objections ¶ 7, at 5.  He argues that "Villasenor's participation in a community corrections program does not qualify as imprisonment of greater than sixty (60) days under 4A1.1."  Objections ¶ 7, at 5 (citing U.S.S.G. § 4A1.1).  He argues that the PSR instead should assign only 1 criminal history point.  See Objections ¶ 7, at 5 (citing U.S.S.G. § 4A1.1(c)).

Sixth, Villasenor objects that the PSR incorrectly lists his mother's last name as Berry, when it is Derry.  See Objections ¶ 9, at 5.  Seventh, Villasenor objects "to any interpretation in

¶ 65 [which describes Villasenor's drug use] that Mr. Villasenor used every drug listed in this section every day . . . .  His answers to these inquiries were meant to demonstrate that he used drugs regularly."  Objections ¶ 10, at 5.  Villasenor notes that, based on his objections, the PSR should reflect a total offense level of 23, a total criminal history score of 12, and a criminal history category of V, resulting in a Guideline imprisonment range of 84-105 months.  See Objections ¶¶ 8, 11, at 5.

The USPO filed its Addendum to the PSR on March 7, 2023.  See Addendum at 1-4.  First, with regard to Villasenor's objection that he did not know Blea well, the USPO amends the PSR "to reflect the defendant met Blea through a friend one and a half or two months ago, and did not know him well . . . [and that,] according to the defendant, he did not spend much time with Blea after meeting him."  Addendum at 1.  With regard to Villasenor's objection that he had not intended to accept Blea's $100.00 offer, the USPO asserts that it will not amend the PSR, because "this information is corroborated two times in audio recording 210505-0007.  In this same audio recording, the defendant is asked about the location of the $100 Blea was going to pay him and states, 'I do not know.'"  Addendum at 1.

Second, with regard to Villasenor's objection that the PSR applies improperly the special offense characteristic, the USPO stands by its application the 2-level enhancement under § 2D1.1(b)(1).  See Addendum at 2.  It points to Villasenor's admission of facts in the Plea Agreement, where he states that he knowingly possessed the firearm, and refers to § 2D1.1's application note 11(A), which states that "'[t]he enhancement for weapon possession . . . should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense . . . .'"  Addendum at 2 (quoting U.S.S.G. § 2D1.1 cmt. 11(A)).  The USPO notes that the weapon was loaded when the agents discovered it, and that Villasenor attempted to discard

a round of ammunition from his front right pocket before being arrested.  See Addendum at 2.

Accordingly, the USPO states that "it appears the defendant's possession of the firearm was

connected to the instant offense, and increased the danger of violence during the drug transaction."

Addendum at 2.

Third, with regard to Villasenor's objection that the PSR should apply a minimal role

reduction and not a minor role reduction, the USPO stands by its application of the minor role

reduction.  See Addendum at 2.  The USPO notes that the PSR recognizes Villasenor's taking

accountability under § 1B1.3 and that his role was limited.  See Addendum at 2.  The USPO asserts,

however, that Villasenor knew that he was driving Blea to a drug transaction, and that the minor

role reduction is appropriate, because "it does not appear the defendant lacked understanding of

the scope of the activity in which he participated."  Addendum at 2.

Fourth, with regard to Villasenor's objection that his conviction under D-202-CR-2013-

03275 should not constitute 3 criminal history points, the USPO agrees, because "the 98 days noted

under March 4, 2015, were part of a deferred sentence."  Addendum at 2-3.  The USPO notes,

however, that Villasenor "should receive two-criminal history points under 4A1.1(b) for the 365

days custody that he was sentenced to on November 11, 2015."  Addendum at 3.  Accordingly, the

USPO amends the PSR to reflect 2 criminal history points instead of 3 criminal history points.  See

Addendum at 4.  Fifth, with regard to Villasenor's objection that the PSR assigns 2 criminal history

points improperly for State case D-202-CR-2019-02208, the USPO "confirmed the community

corrections program is a non-imprisonment sentence."  Addendum at 3.  Accordingly, the USPO

amends the PSR to assign 1 criminal history point for this conviction and not 2 criminal history

points.  See Addendum at 3.

Sixth, with regard to Villasenor's objection that he did not use every drug every day, the USPO amends the PSR "to include that although the defendant reported using multiple substances daily, he also asserts that he did not use every substance every day.'  Addendum at 3.  Seventh, with regard to Villasenor's objection that his mother's last name is Derry and not Berry, the USPO amends the PSR to make this correction.  See Addendum at 4.  The USPO notes that, with the amendments it has made to the PSR, Villasenor's total criminal history score is 13, his criminal history category remains VI, his total offense level remains unchanged, and his Guideline imprisonment range remains 130 to 162 months.  See Addendum at 3.

## ANALYSIS

The Court analyzes Villasenor's Objections below.  It first reviews Villasenor's factual Objections before considering his Objections related to enhancements, reductions, and his criminal history.  The Court: (i) sustains in part and overrules in part Villasenor's factual Objections; (ii) overrules Villasenor's Objection that the PSR applies improperly the special offense characteristic, because the Court concludes that Villasenor knowingly possessed the firearm; (iii) overrules Villasenor's Objection that he is entitled to a minimal participant role reduction instead of a minor participant role reduction; (iv) sustains in part Villasenor's Objection that his conviction in case D-202-CR-2013-03275 should not constitute 3 criminal history points; and (v) sustains Villasenor's Objection that the PSR assigns improperly 2 criminal history points for case D-202-CR-2019-02208.

## I.   THE COURT SUSTAINS IN PART AND OVERRULES IN PART VILLASENOR'S FACTUAL OBJECTIONS.

Villasenor makes five factual Objections, regarding: (i) the spelling of his mother's name, see Objections ¶ 9, at 5; (ii) the frequency of his drug use, see Objections ¶ 10, at 5; (iii) his

familiarity with Blea, see Objections ¶ 1, at 1; (iv) whether Villasenor $100.00 intended to accept Blea's offer of $100.00 for Villasenor to give Blea a ride to the drug deal's location, see Objections ¶ 1, at 1; and (v) whether Villasenor knew there was a gun in a backpack inside the car, see Objections ¶ 2, at 2. First, the Addendum amends the PSR to correct the spelling of Villasenor's mother's last name to Derry. See Addendum at 4. Accordingly, the Court sustains this Objection. Second, the Addendum amends the PSR to indicate that Villasenor asserts that he did not use every drug that he lists every day. See Addendum at 3. Accordingly, the Court sustains this Objection. Third, the Addendum amends the PSR to indicate that, although Villasenor had met Blea one-and-a-half to two months before their arrests, Villasenor did not know Blea well, and that Villasenor did not spend much time with Blea before the arrest. See Addendum at 1. Without evidence to the contrary, the Court accepts Villasenor's assertion that he did not know Blea well and did not spend much time with him, and therefore sustains this Objection.

Fourth, the Addendum declines to amend the PSR to reflect Villasenor's Objection that he "was going to be paid $100." Objections ¶ 1, at 1. See Addendum at 1. The USPO states that, "[w]ith respect to the defendant's intention to accept $100 from Blea, the PSR will remain the same, as this information is corroborated two times in audio recording 210505-0007," and that, "[i]n this same audio recording, the defendant is asked about the location of the $100 Blea was going to pay him and states, 'I do not know.'" Addendum at 1. This recording is not in the record before the Court. Villasenor admits in the Plea Agreement, however, that he "drove another co-conspirator to a meeting location in exchange for a promise of payment." Plea Agreement ¶ 10, at 5. Accordingly, the Court concludes that Villasenor intended to accept the $100.00 payment and, if the ATF agents had not arrested Villasenor and Blea, Villasenor "was going to be paid $100." Objections ¶ 1, at 1. Accordingly, the Court overrules this Objection.

Fifth, the Addendum declines to amend the PSR to reflect Villasenor's Objection that he did not know that the firearm was in the backpack that the ATF agents retrieved from the car. See Addendum at 2; Objections ¶ 2, at 1-2. As the Court discusses above, see note 2, supra, at 4, in the Plea Agreement, Villasenor's statement of facts, which he adopts in the PSR as his version of events, see PSR ¶ 18, at 7, states: "Also on May 5, 2021, ATF agents searched my vehicle and recovered a backpack containing a loaded Kimber Custom II .45 caliber pistol bearing the serial number K722306 and 25 rounds of assorted ammunition, which I knowingly possessed." Plea Agreement ¶ 10, at 5. When coupled with the vehicle insurance card and probation card's presence in the backpack, both of which belonged to Villasenor, and indicate that Villasenor opened the backpack before inserting the cards, the Court concludes, by a preponderance of the evidence, that Villasenor knowingly possessed the firearm and ammunition in the backpack. Accordingly, the Court overrules Villasenor's Objection to the extent that he suggests that he did not know the firearm was in the car during the transaction.[3]

## II.    THE COURT OVERRULES VILLASENOR'S OBJECTION THAT THE PSR APPLIES IMPROPERLY THE SPECIAL OFFENSE CHARACTERISTIC, BECAUSE VILLASENOR KNOWINGLY POSSESSED THE FIREARM.

Villasenor objects to the 2-level increase resulting from the PSR's application of a special offense characteristic on the basis that Villasenor possessed a firearm during the crime. See PSR ¶ 2, at 1. Section 2D1.1(b)(1) instructs that, when determining the total offense level for unlawful manufacturing, importing, exporting, or trafficking crimes, "[i]f a dangerous weapon (including a firearm) was possessed, increase by **2** levels." U.S.S.G. § 2D1.1(b)(1) (bold in original).

---

[3]The Court considers in the next section the remainder of Villasenor's Objection regarding whether this knowledge is sufficient to apply the special offense characteristic under § 2D1.1(b)(1).

Application Note 11(a) to § 2D1.1(b)(1) states: "The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. 11(A).

The Court concludes that it is not "clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. 11(A). The Court previously has concluded that a defendant's "uncorroborated statement, through counsel, that he did not know that the Taser was in the back seat of the vehicle he was driving does not make it 'clearly improbable' that the Taser was used in connection with the offense to which he pled guilty." United States v. Gonzalez, 200 F. Supp. 3d 1265, 1273 (D.N.M. 2016)(Browning, J.)(quoting United States v. Chatman, 994 F.2d 1510, 1517 (10th Cir. 1993)). In United States v. Chatman, the Tenth Circuit concludes that the United States met its burden to prove that the firearm in question was proximate to the offense, and states:

> We have held that possession under § 2D1.1(b)(1) does not require a finding of scienter, *see United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir.1991), and that the trial judge may "enhance a drug defendant's sentence for mere possession of a dangerous weapon even if there is no evidence other than proximity to suggest the gun was connected to the offense." *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir.1992)(guns seized from kitchen and master bedroom were in adequate proximity).

United States v. Chatman, 994 F.2d at 1517. The Court concludes above that Villasenor knew that the firearm and ammunition were in the car when he drove Blea to the transaction location. Even if the Court had not reached this conclusion, the weapon's proximity to the crime is sufficient, without evidence that it is "clearly improbable" that the weapon was connected to the crime, to apply the 2-level enhancement under § 2D1.1(b)(1). U.S.S.G. § 2D1.1 cmt. 11(A). See United States v. Chatman, 994 F.2d at 1517. Accordingly, the Court overrules Villasenor's Objection and applies the 2-level enhancement.

III.    **THE COURT OVERRULES VILLASENOR'S OBJECTION THAT HE IS
ENTITLED TO A MINIMAL PARTICIPANT ROLE REDUCTION INSTEAD OF
A MINOR PARTICIPANT ROLE REDUCTION.**

Villasenor objects to the PSR's application of a 2-level minor participant role reduction, asserting that he should receive a 4-level minimal participant role reduction instead.  See Objections ¶ 3, at 2.  Specifically, he asserts that: (i) the ATF agents were unaware of Villasenor until the arrest; (ii) Villasenor did not know the full scope of the trafficking operation; (iii) Villasenor does not know about the identity of others who are involved in the conspiracy; (iv) Villasenor's involvement was limited to his role as Blea's transportation to the hotel, and he was involved with only this one deal; (v) he has been cooperative with authorities; (vi) Villasenor did not receive payment for driving Blea; and (vii) Villasenor has demonstrated accountability for his actions.  See Objections ¶¶ 3-5, at 2-4.  The Court concludes that Villasenor has not demonstrated by a preponderance of the evidence that a minimal role reduction is appropriate under § 3B1.2, but concludes that he has demonstrated that a minor role reduction is appropriate. See United States v. Salas, 756 F.3d 1196, 1207 (10th Cir. 2014)("The defendant bears the burden of proving by a preponderance of the evidence whether an adjustment under § 3B1.2 is warranted.").

Section 3B1.2 directs the Court to apply a 2- to 4-level reduction if the defendant's role in the offense was "minimal," "minor," or "fall[s] between" minimal and minor.  U.S.S.G. § 3B1.2. For § 3B1.2 to apply, the defendant must be a participant in the criminal activity, i.e., must be criminally responsible for the offense, and multiple people must have been involved in the offense. See U.S.S.G. § 3B1.2 cmts. 1-2 (referencing U.S.S.G. § 3B1.1 cmt. 1 to define "participant").  The Guidelines note that determining whether to apply a reduction under § 3B1.2 "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts

of the particular case." U.S.S.G. § 3B1.2 cmt. 3(C). The Guidelines propose the following, non-exhaustive list of factors to consider:

> (i)    the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)   the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)  the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)   the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)    the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. 3(C). Finally, the Guidelines note that this reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group," for the minimal role reduction, or "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal," for the minor role reduction. U.S.S.G. § 3B1.2 cmts. 4-5. See United States v. Nkome, 987 F.3d 1262, 1269-71 (10th Cir. 2021) (describing the contours of § 3B1.2's application).

The Court concludes first that a reduction under § 3B1.3 is appropriate for Villasenor's participation in the crime, because the extent of his participation in the drug trafficking was to receive payment to drive Blea to the exchange location. See PSR ¶ 15, at 6; Plea Agreement ¶ 10, at 5; U.S.S.G. § 3B1.3 cmt. 3 ("[A] defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline."). Accordingly, the Court next must determine whether

Villasenor is eligible for a 4-level minimal role reduction under § 3B1.2(a), for a minor role reduction under § 3B1.2(b), or an intermediate reduction.

The Court concludes that a minor participant reduction, and not a minimal participant reduction, captures most appropriately Villasenor's involvement with the drug trafficking operation. The Tenth Circuit explains in United States v. Caruth, 930 F.2d 811 (10th Cir. 1991), that a district court would be "hard pressed" to not conclude that a defendant was not a minimal participant if the district court accepted the defendants assertion that his involvement with a drug trafficking crime was limited to his being a passenger with a courier on a one-time drug delivery, that his reason for going on the excursion was to visit his ailing grandmother, and that his only fault was not having abandoned the journey once he became aware that his co-traveler was trafficking drugs. 930 F.2d at 814. The Tenth Circuit notes that the district court relied instead on

> the bare fact that Caruth [the defendant] and Engler [the other traveler] transported a commercial shipment of drugs across the United States for delivery and sale on the east coast. Caruth was driving the vehicle at the time he was arrested and his plea of guilty establishes his culpability with respect to the crime charged, i.e., he was not an innocent bystander. In addition, the logistics of obtaining possession of the marijuana and methamphetamine Caruth carried for his personal use may imply that Caruth had more knowledge of the drug organization than he claims.

930 F.2d at 815. The Tenth Circuit notes that some couriers may benefit from a minimal role reduction, but that such a reduction is not guaranteed, and indicates that, with respect to a drug courier's relative culpability to other actors in a drug trafficking operation, "'[i]t would be unproductive to debate which function is the more culpable.'" 930 F.2d at 815 (quoting United States v. Calderon-Porras, 911 F.2d 421, 423 (10th Cir. 1990)). On this basis, the Tenth Circuit holds that the district court did not err in concluding that Caruth was not entitled to a minimal participant reduction. See United States v. Caruth, 930 F.2d at 816.

Here, although Villasenor did not know the identities of others who may have been involved in the conspiracy, Villasenor knew that he was driving Blea to the hotel so that Blea could exchange methamphetamine in exchange for firearms.  See Plea Agreement ¶ 10, at 5; PSR ¶ 15, at 6.  Additionally, Villasenor knowingly carried a firearm in a backpack in the car as he drove Blea to the hotel and was carrying a round of ammunition in his pocket, which he attempted to discard before the ATF agents arrested him.  See Plea Agreement ¶ 10, at 5; PSR ¶ 12, at 5.  Like in United States v. Caruth, Villasenor was driving the car immediately before the agent arrested him and Blea, and his Plea Agreement indicates that he was not an innocent bystander.  See PSR ¶ 12, at 5; United States v. Caruth, 930 F.2d at 815.  On these facts' basis, the Court concludes that Villasenor has not demonstrated by a preponderance of the evidence that a minimal role reduction under § 3B1.2 is appropriate, but concludes that, because his participation was limited to driving Blea to the hotel, a minor role reduction is appropriate.  See United States v. Salas, 756 F.3d at 1207.  Accordingly, the Court overrules Villasenor's Objection.

## IV.  THE COURT SUSTAINS IN PART VILLASENOR'S OBJECTION THAT HIS CONVICTION UNDER D-202-CR-2013-03275 SHOULD NOT CONSTITUTE 3 CRIMINAL HISTORY POINTS.

Villasenor objects to the PSR's assignment of 3 criminal history points for his State conviction in case D-202-CR-2013-03275.  See Objections ¶ 6, at 4.  He argues that, because he was not sentenced to or imprisoned for more than sixty days, this conviction should contribute only 1 criminal history point.  See Objections ¶ 6, at 5 (citing U.S.S.G. § 4A1.1).  The USPO agrees, because "the 98 days noted under March 4, 2015, were part of a deferred sentence." Addendum at 2-3.  The USPO notes, however, that Villasenor "should receive two-criminal history

points under 4A1.1(b) for the 365 days custody that he was sentenced to on November 11, 2015."[4] Addendum at 3. Accordingly, the USPO amends the PSR to reflect 2 criminal history points instead of 3 criminal history points. See Addendum at 4.

Section 4A1.1 establishes the allocation of criminal history points for a defendant's previous sentences. See U.S.S.G. § 4A1.1. Relevant here, § 4A1.1 states:

(a)     Add **3** points for each prior sentence of imprisonment exceeding one year and one month.

(b)     Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c)     Add **1** point for each prior sentence not counted in (a) or (b), up to a total of **4** points for this subsection.

U.S.S.G. § 4A1.1(a)-(c) (bold in original). The PSR lists the following details regarding Villasenor's sentence in connection with case D-202-CR-2013-03275:

11/06/2014: Conditional discharge, 18 months supervised probation

01/28/2015: Probation revoked and reinstated

03/04/2015: Conditional discharge revoked, deferred 18 months, in custody until June 9, 2015 (98 days)

06/30/2015: Probation amended to end on April 10, 2016

11/19/2015: Probation revoked and reinstated, 365 days of custody

04/26/2016: Probation expired without revocation

---

[4]The Addendum lists November 11, 2015, as Villasenor's sentencing date. See Addendum at 3. This appears to be a typo, because the PSR refers to November 19, 2015, multiple times when describing Villasenor's criminal history for this crime and for the concurrent sentence he served in connection with case D-202-CR-2015-00693. See PSR ¶¶ 36-37, at 10-11. The State court docket reflects November 19, 2015, as the date for an Entry of Appearance, and November 20, 2015, as the entry date for an Order Continuing Probation. See State Court Docket in Case No. D-202-CR-2013-03275.

PSR ¶ 36, at 10. The PSR states that, "[o]n November 19, 2015, the defendant's probation was revoked and reinstated. He was sentenced to 365 days custody." PSR ¶ 36, at 11. The USPO upon review of Villasenor's probation and sentencing history for this crime confirmed that Villasenor was sentenced to 365 days of custody on November 19, 2015.[5] See Addendum at 3.

_____

[5]The Court spoke with the United States Probation Officer assigned to this case, who spoke to officials at the Metropolitan Detention Center and confirmed that Villasenor was in custody at the Metropolitan Detention Center from August 4, 2015, to May 12, 2016. The Court recognizes that Villasenor received a deferred sentence in that case. Based on the Court's conversation with the USPO, however, that deferred sentence included a conditional discharge which in turn included a period of probation. In the Order Revoking Probation, filed November 20, 2015, in D-202-CR-2013-03275, the State district court revoked Villasenor's probation and sentenced him to 365 days of incarceration beginning November 19, 2015. See Order Revoking Probation at 1-2. Specifically, the Order Revoking Probation states:

> The defendant is sentenced to serve a term of 365 days beginning 11/19/15 in:
>
> > Metropolitan Detention Center . . .
>
> . . . .
>
> > The balance of the sentence is suspended, and the defendant
> > is reinstated on probation, after serving 365 days.
>
> . . . .
>
> The new probationary period begins upon release from MDC

Order Revoking Probation at 2 (form boxes and lines omitted).

The Order Revoking Probation, coupled with the USPO's confirmation that Villasenor was in the Metropolitan Detention Center's custody from August 4, 2015, to May 12, 2016, support the USPO's assertion that Villasenor was sentenced to a period of incarceration greater than sixty days. See Addendum at 4. That the State district court did not sentence Villasenor to a period of incarceration on the underlying offense's basis and instead deferred the sentence and ultimately dismissed the charges, see Order of Dismissal on Deferred Sentence at 1, filed July 7, 2023 (Doc. 103-2), does not change that Villasenor was sentenced to a period of incarceration for a probation violation in connection with the underlying offense. Section 4A1.2(k) directs courts to, "[i]n the case of a prior revocation of probation . . . , add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable." U.S.S.G. § 4A1.2(k)(1). Because the State district court did not sentence Villasenor to a term of imprisonment for the underlying offense in case D-202-CR-2013-03275, the Court uses the term of imprisonment associated with the

These records reflect that Villasenor was never sentenced to a period of imprisonment greater than one year and one month, but rather was in custody for 98 days and later sentenced to 365 days in custody for a probation violation, which is a period of at least sixty days.  See PSR ¶ 36, at 10. Accordingly, the Court agrees with the USPO that these sentences do not warrant 3 criminal history points under § 4A1.1(a) but warrant instead 2 criminal history points under § 4A1.1(b).  Thus, the Court sustains in part Villasenor's Objection and applies 2 criminal history points for Villasenor's conviction for case D-202-CR-2013-03275.

## V.    THE COURT SUSTAINS VILLASENOR'S OBJECTION THAT THE PSR ASSIGNS 2 CRIMINAL HISTORY POINTS IMPROPERLY FOR STATE CASE D-202-CR-2019-02208.

Villasenor objects to the PSR's assignment of 2 criminal history points in connections with his conviction in State case D-202-CR-2019-02208.  See Objections ¶ 7, at 5.  He argues that "Villasenor's participation in a community corrections program does not qualify as imprisonment of greater than sixty (60) days under 4A1.1."  Objections ¶ 7, at 5 (citing U.S.S.G. § 4A1.1).  The USPO "confirmed the community corrections program is a non-imprisonment sentence," and amends the PSR to assign 1 criminal history point for this conviction and not 2 criminal history points.  See Addendum at 3.  Because the community corrections program is a non-imprisonment sentence, it is not a "prior sentence of imprisonment" such that §§ 4A1.1(a) or (b) are applicable. U.S.S.G. §§ 4A1.1(a)-(b).  See U.S.S.G. § 4A1.2(b)(1) ("The term 'sentence of imprisonment' means a sentence of incarceration . . . .").  Accordingly, Villasenor's time in the community corrections program is a "prior sentence not counted in (a) or (b)" and § 4A1.1 directs the Court

---

probation violation to calculate Villasenor's criminal history points in connection with that offense.

to apply 1 criminal history point. U.S.S.G. § 4A1.1(c). Accordingly, the Court sustains Villasenor's Objection.

In summary, the Court: (i) applies the 2-level enhancement for the firearm special offense characteristic; (ii) applies a 2-level minor role reduction; (iii) applies 2 criminal history points for Villasenor's previous conviction in case D-202-CR-2013-03275; and (iv) applies 1 criminal history point for Villasenor's previous conviction in case D-202-CR-2019-02208. Accordingly, Villasenor's total offense level is 27, his total criminal history score is 13, and his criminal history category is VI. With a total offense level of 27 and a criminal history category of VI, Villasenor's Guideline imprisonment range is 130 to 162 months.

**IT IS ORDERED** that: (i) the Defendant's Objections to Presentence Investigation Report, filed February 24, 2023 (Doc. 96)("Objections"), are sustained in part and overruled in part; (ii) Defendant Gabriel Villasenor's factual Objections are sustained in part and overruled in part; (iii) the Court applies a 2-level enhancement under U.S.S.G. § 2D1.1(b)(1), because Villasenor possessed a firearm during the offense; (iv) the Court applies a 2-level reduction under U.S.S.G. § 3B1.2(b), because Villasenor played a minor role in the offense; (v) the Court applies 2 criminal history points to Villasenor's conviction in State case D-202-CR-2013-03275; (vi) the Court applies 1 criminal history point to Villasenor's conviction in State case D-202-CR-2019-02208; (vii) Villasenor's total offense level is 27; (viii) Villasenor's total criminal history score is 13, which establishes a criminal history category of VI; (ix) a total offense level of 27 and a criminal history category of VI establish a Guideline imprisonment range of 130 to 162 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
  United States Attorney
Jaymie L. Roybal
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Diego R. Esquibel
Esquibel Law Firm, PA
Albuquerque, New Mexico

   *Attorneys for the Defendant*